IN THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KAREN A. COPELAND and THOMAS  }
L. COPELAND, JR., for themselves,    }
as Legal Representatives of THOMAS  L. }
COPELAND, a Mentally Incapacitated  }  CIVIL ACTION FILE
Adult (Deceased);                      }  NO.1:15-CV-02303-ELR____
                                    }  VIOLATION OF THE
              Plaintiffs,      }  FOURTEENTH
                                }  AMENDMENT TO THE
vs.                           }  UNITED STATES
                                }  CONSTITUTION (42 U.S.C.
CLAYTON COUNTY, OFFICER I.    }  §1983); CONSPIRACY TO
BELL, and SGT. SCOTT MALETTE,  }  VIOLATE FOURTEENTH
in their Individual and Official Capacity  }  AMENDMENT (42 U.S.C.
as Agents for CLAYTON COUNTY    }  §1985(3)); NEGLIGENCE/
POLICE DEPARTMENT; INV. LISA    }  BREACH OF DUTY;
SHELTON and JOHN DOE, in their    }  INTERFERENCE WITH
Individual Capacity as Agents for    GBI; }  RIGHT TO BURIAL;
GEORGIA CREMATION CENTERS,    }  TRESPASS TO PROPERTY
LLC, and D. KENNY MILLER, JR.;    }  RIGHTS;  INTERFERENCE
SOUTHERN REGIONAL MEDICAL    }  WITH CONTRACTUAL
CENTERS; LIFELINK FOUNDATION, }  RELATIONS; CONVER-
INC. and CARLEY "DOE" and      }  SION; INTENTIONAL
TIFFANY "DOE"; COVENANT      }  INFLICTION OF
CONNECTION and KAREN COLE;    }  EMOTIONAL DISTRESS.
UHS OF ANCHOR, LP D/B/A        }
SOUHERN CRESCENT BEHAVIORL  }
HEALTH SYSTEM AT ANCHOR,    }
                                }
            Defendants.[1]    }
_____/

---

[1] The last name of Carley and Tiffany and the identity of John Doe are unknown at this time. When Plaintiffs ascertain this information, they will amend their Complaint accordingly.

## AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

### I.   INTRODUCTION

1.    Plaintiffs, Karen A. Copeland and Thomas L. Copeland, Jr., are the parents and legal representatives of Thomas L. Copeland, (hereinafter, "Decedent") and bring this Complaint for themselves.

2.    This civil rights action seeks compensatory and punitive damages and any other damages allowed by this Court, arising from the deprivation of the civil rights of the Plaintiffs; conspiracy to deprive Plaintiffs of their civil rights; negligent death of the Decedent; negligent treatment of the Decedent's corpse; interference of right of Decedent's legal representatives to view and properly bury the Decedent's corpse; trespass to the property rights of the Decedent's representatives, and Interference with Contractual Relations.

3.    The Decedent was a 39 year old African American male that was born with severe schizophrenia and other mentally and physically incapacitating and debilitating diseases.  All of his life he was a special needs individual that required 24-hour care and supervision.  At age 9, he was administered the IQ test and scored 69 or lower.  He was in special education through the 10th grade, his highest level of matriculation.

4.    Mrs. and Mr. Copeland unable to provide appropriate care to the

Decedent were forced to place him in a 24-hour adult care facility.  They received state assistance (Medicaid and Medicare) on behalf of the Decedent to pay for the services provided to him by the state and his 24-hour care.  At the time of his death, the Decedent resided in a 24-hour home care facility in College Park, Georgia.

5.      Mrs.  Copeland birthed the Decedent when she was 16 years old.  She did not complete high school but earned her GED later.  She attended and earned some business college credit hours.  She is disabled and works limited hours on an as needed basis.

6.      Mr. Copeland reached the 9th grade, the highest level of matriculation, and did not attend college.   Mr. Copeland's previous work was in the custodian/maintenance industry.  Currently, Mr. Copeland is disabled and does not work.  At the time of the Decedent's death, Mrs. and Mr. Copeland resided in Horry County, Myrtle Beach, South Carolina, and currently reside there.

## II.    JURISDICTION AND VENUE

7.      This civil rights action is brought pursuant to, inter alia, the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Conspiracy to Deprive of  Fourteenth Amendment, 42 U.S.C. § 1985(3).  Federal, Jurisdiction, Diversity Jurisdiction (Plaintiffs seek an amount in controversy over

$75,000), and Supplemental Jurisdiction are conferred upon this Court by 28 U.S.C. §§1331, 1332, and 1367.

8.      Venue is proper in this jurisdiction, pursuant to 28 U.S.C. §1391, in that the Defendants reside in this district in which a substantial part of the events or omissions giving rise to the claim occurred.

### III.      PARTIES

9.      Defendant, Clayton County, is a public entity which has its principal place of business in Clayton County, Georgia, and was at all times pertinent hereto operating in the district in which a substantial part of the events or omissions giving rise to the claim occurred.  Clayton County may be served through its Agent, Jeffrey E. Turner, Chairman, Board of Commissioners, Clayton County Administration, 112 Smith Street, Annex 1, Jonesboro, Georgia  30236.

10.     Defendants, Officer I. Bell (hereinafter, "Officer Bell") and Sgt. Scott Malette (hereinafter, "Sgt. Malette"), were at all times pertinent hereto acting as police officers, under color of law, jointly and separately in the discharge of their duties and with the express authority of Clayton County Police Department.  They may be served at Headquarters, Clayton County Police Department, 7911 N. McDonough Street, Jonesboro, Georgia  30236.

11.     Defendant, Lisa Shelton, Death Investigator, (hereinafter, "Inv.

4

Shelton") and Medical Examiner, John Doe, were at all times pertinent hereto agents of the GBI, acting under color of state law, jointly and separately in the discharge of their duties and with the express authority of the State of Georgia. They may be served at 3121 Panthersville Road, Decatur, Georgia  30034.

12.    Defendant, Georgia Cremation Centers, LLC (hereinafter, "Georgia Cremation") was at all times pertinent hereto a private company, whose principal place of  business is in Cobb County, Georgia, and operated in the district in which a substantial part of the events or omissions giving rise to the claim occurred. Georgia Cremation may be served through its Agent, Clifton C. Dempsey, 4325 Highway 92, Acworth, Georgia  30102.

13.    Defendant, D. Kenneth Miller, Jr. (hereinafter, "Mr. Miller"), was at all times pertinent hereto the Funeral Director at Georgia Cremation and operated in the district in which a substantial part of the events or omissions giving rise to the claim occurred.  Mr. Miller may be served at 4325 Highway 92 Acworth, Georgia 30102.

14.    Defendant, Southern Regional Medical Center, was at all times pertinent hereto a private company, whose principal place of  business is in Clayton County, Georgia, and operated in the district in which a substantial part of the events or omissions giving rise to the claim occurred.  Southern Regional

Medical Center (hereinafter, "Southern Regional") may be served through its Agent, David Winkle, Esq. Nelson Mullins, 201 17th Street, NW, Ste. 1700, Atlanta, Georgia  30363.

15.     Defendant, Lifelink Foundation, Inc., was at all times pertinent hereto a private company, whose headquarters is in Florida but operates a Lifelink main office in Gwinnett County, Georgia, and operated in the district in which a substantial part of the events or omissions giving rise to the claim occurred. Lifelink Foundation, Inc. (hereinafter, "Lifelink") may be served through its Agent, Lynn Smith, at 2875 Northwoods Pkwy, Norcross, Georgia  30071.

16.     Defendants, Carley "Doe" and Tiffany "Doe" at all times pertinent hereto were agents acting on behalf of Lifelink.  These Defendants may be properly served after their full names and addresses have been identified.

17.     Defendant, Covenant Connection, was at all times pertinent hereto a private company, whose principal place of business is in Fulton County, Georgia, and operated in the district in which a substantial part of the events or omissions giving rise to the claim occurred.  Covenant Connection (hereinafter, "CC") may be served through its Owner, Karen Cole, at 5884 N. Castlegate Dr., College Park, Georgia 30349.

18.     Defendant, Karen Cole (hereinafter, "Ms. Cole"), was at all times

pertinent hereto the Owner, Operator, and Managing Officer of CC, and operated in the district in which a substantial part of the events or omissions giving rise to the claim occurred.  Ms. Cole may be served at 5884 N. Castlegate Dr., College Park, Georgia  30349.

19.    Defendant, UHS of Anchor, LP d/b/a Southern Crescent Behavioral Health System at Anchor, was at all times pertinent hereto a private company, whose principal place of  business is in Henry County, Georgia, and operated in the district in which a substantial part of the events or omissions giving rise to the claim occurred.  UHS of Anchor, LP d/b/a Southern Crescent Behavioral Health System at Anchor (hereinafter, "Anchor") may be served through its Agent, Kathleen Kelly, at 100 Eagles Landing Parkway, Stockbridge, Georgia  30281.

## IV.    FACTUAL ALLEGATIONS

### Covenant Connection/Karen Cole and Anchor Failed to Perform Duty and Hid Information About the Decedent Being Missing From Plaintiffs.

20.    On or about March 19, 2014, Mrs. Copeland transported the Decedent to CC where he checked into the facility to receive personal and professional care from Ms. Cole for his disability and special needs.  CC is a 24-hour residential-care provider that provides services to mentally and physically incapacitated adults.

21.    By virtue of her title and position, Owner and Operator of CC, on

March 19, 52014, Ms. Cole processed the appropriate paperwork for the Decedent's admission into CC and signed off as a caregiver to receive him into her care for an extended period of time.

22.     Mrs. Copeland tendered payment to Ms. Cole for the housing and mental health services CC would provide to the Decedent.

23.     On or about May 8, 2014, Ms. Cole took the Decedent to visit her personal physician to get evaluated, and the physician prescribed medication, which the Decedent consumed.   Afterwards, the Decedent began displaying behavioral problems, and Ms. Cole checked him into Anchor (10:30 a.m. on May 9, 2014) to receive in-patient/out-patient mental health treatment for his behavior.

24.     Anchor is an in/out patient treatment facility that provides treatment of behavioral, emotional, and mental health problems in older adults, as well as adult supervision.  It is a campus owned and operated by Southern Crescent.

25.     At the time, Decedent had his own primary healthcare provider, yet Ms. Cole did not take Decedent to see his physician or otherwise contact the provider to evaluate him.  Nor did Ms. Cole inform Mrs. and Mr. Copeland prior to her taking the Decedent to her physician.

26.     On May 9, 2014, while under the care and supervision of Ms. Cole and Anchor, the Decedent walked off the grounds of Anchor around 1:00 p.m. and

became missing.

27.     Sometime on May 9, 2014, after the Decedent became missing, Anchor (thinking they were calling Karen Cole) called Mrs. Copeland's son, Jamel Copeland, and asked to speak to Ms. Karen Cole.  When Jamel asked the female if she wanted to speak to Karen Copeland, she hung up the phone.  Jamel speed-dialed the number and reached Anchor.

28.     Neither Ms. Cole nor Anchor reported the Decedent missing that day, until twenty-four hours later on May 10, 2014, when Anchor contacted Mrs. Copeland.  Ms. Cole suggested that a BOLO be issued against the Decedent.

29.     The Decedent, reportedly, walked from College Park (Fulton County) to Jonesboro (Clayton County) onto Battle Creek Road in Jonesboro, where he was, reportedly, struck by a driver.  He was found lying on the side of Battle Creek Road on May 10, 2014 at approximately 10:00 p.m.  Sometime later, he died.

30.     These Defendants were required to contact Plaintiffs about the Decedent being missing, and they knowingly and intentionally failed to, although they had Plaintiffs' contact information.   And Anchor intentionally avoided communicating this information to Mrs. Copeland when it mistakenly called her on May 9, 2014 (thinking it had called Ms. Cole).

31.     Prior to May 10, 2014, the Decedent had walked off the grounds of

9

Anchor facilities and went missing.

32.    Each of these Defendants knew the Decedent was physically and mentally disabled, and the Decedent and Plaintiffs were disadvantaged societally, economically, and educationally.

**Clayton County's Incomplete, Deficient, and Misleading  Investigation.**

33.    Defendants, Officer Bell and Sgt. Malette, arrived at the scene of the accident, where the Decedent was struck, and they interviewed material witnesses. They failed to record or otherwise document the names and addresses of the witnesses and their statements, and they failed to interview other witnesses they knew about and who were present at the scene.

34.    Additionally, they knowingly and intentionally entered false information in their police reports and redacted pertinent and material information from the same.

35.    Officer Bell and Sgt. Malette failed to fully investigate the scene after the accident and interview the driver that, reportedly, hit the Decedent.

36.    Officer Bell, Sgt. Malette, and Clayton County Police Department (hereinafter, "CCPD") failed to recommend to the District Attorney that he/she investigate the matter to determine liability by the driver that reportedly struck the Decedent.

37.   Instead of conducting a thorough interview of the driver and the accident, they concluded, without any inquiry into any liability by the driver, that the Department would not give her (the driver) a citation nor forward her case to the District Attorney or appropriate authority to conduct an independent investigation of the accident.

38.   Sgt. Malette stated to Mrs. Copeland that it was the Decedent's fault that he was hit and the driver would not be charged because she was pregnant and emotional.

39.   Additionally, these Defendants failed to provide Mrs. and Mr. Copeland with information they requested that would have permitted them to view the Decedent's body and to prepare for proper burial, even after Mrs. Copeland made repeated requests for the information.

40.   Sgt. Malette told Mrs. Copeland that a Ms. Dorcey from GBI (who Plaintiffs believe is John Doe) would contact her.  Plaintiff never received a call from her.

41.   Each of these Defendants knew the Decedent was physically and mentally disabled, and the Decedent and Plaintiffs were disadvantaged societally, economically, and educationally.

**<u>Defendants', Southern Regional, Lifelink and it's Representatives, and
GBI's Representatives[2] Unauthorized Removal of the Decedent's Organs
and Tissues from His Person.</u>**

42.     On May 10, 2014, Clayton County EMS transferred the Decedent's
body from Battle Creek Road to Southern Regional.  Subsequently, the body was
transferred to GBI after Southern Regional and GBI made the arrangements.

43.     Shortly after Plaintiffs learned that the Decedent's body was at the
GBI, Carley "Doe" or Tiffany "Doe" called Mrs. Copeland to thank her for her
son's eyes and tissue.  Mrs. Copeland expressed shock and asked the female caller
what she was talking about; the female caller hung up the phone.

44.     Mrs. Copeland speed-dialed the number and reached Lifelink.   A
female on the line told Mrs. Copeland that the lady who called was new and had
made a mistake.

45.     Southern Regional authorized Lifelink and its agents, Carley "Doe"
and Tiffany "Doe", to enter its facilities and remove or cause the eyes and tissues
of the Decedent to be removed from his person, for some remuneration.

46.     And/or, Georgia Bureau of Investigations' (hereinafter, "GBI")
representatives and its agents, Inv. Shelton and John Doe, removed the Decedent's
eyes and tissues from the Decedent's person or caused Lifelink and it agents to

_____

[2] To the extent GBI Representatives are later identified, that are not identified here, Plaintiffs will seek leave to

enter the GBI facilities and remove the same or assist in the removal, for some remuneration.

47.    The Decedent was not an organ donor, and these Defendants were aware that he wasn't.

48.    Additionally, Mrs. and Mr. Copeland did not give these Defendants authorization to remove the Decedent's eyes and tissues or cause the same to be removed from his person.

49.    At the time of the removal, Southern Regional and Lifelink had policy in place regarding removing and obtaining donor organs and tissues.  As well, Georgia Law existed, concerning removal.   Prior to removing and/or obtaining the Decedent's eyes and tissues, these Defendants were aware that this policy and Georgia Law existed; yet they did not comply with them.

50.    Each of these Defendants knew the Decedent was physically and mentally disabled, and the Decedent and Plaintiffs were disadvantaged societally, economically, and educationally.

**Defendants, Southern Regional, Inv. Shelton, and Georgia Cremation Hid the Removal of the Decedent's Eyes and Tissues, and/or Interfered with Plaintiffs' Right To View and Retrieve the Body for Burial.**

51.    When Officer Bell arrived at the scene of the accident on May 10,

---

amend their Complaint to add them as defendants.

2014, the Decedent was alive and complained of chest pains.  Officer Bell did not notice any visible signs of external trauma, concerning the Decedent.

52.     Southern Regional had a duty to contact Mrs. and Mr. Copeland and inform them that the Decedent's body was at its facility.  It failed to do so.

53.     After the Decedent arrived at Southern Regional, his body was not at the hospital long enough for the head nurse and staff to thoroughly document injuries, other than the x-ray that revealed broken bones.

54.     After GBI received Decedent's body from Southern Regional,  Inv. Shelton gave the Social Worker (Rasheeda Abdur-Rahman) instructions not to notify the family of the Decedent's death until after an autopsy had been performed, which was scheduled for May 12, 2014.  Investigator Shelton had a duty to inform Mrs. and Mr. Copeland when the body arrived at the GBI.  She failed to do so.

55.     Approximately around midnight on May 10, 2014, Sgt. Malette contacted Mrs. Copeland to inform her that the Decedent had been struck by a car and killed, and his body was at GBI or would be at the GBI.

56.     After learning that the Decedent's body was at the GBI, Mrs. Copeland contacted GBI and spoke with Investigator Shelton and the medical examiner, John Doe, and requested to review the Decedent's body and retrieve it

for burial.  Inv. Shelton and John Doe denied Mrs. Copeland's request, each time, citing there were a lot of bodies at the morgue or too many there, and another time they told Mrs. Copeland the body had to be released to a funeral home before the family could view it.

57.    Additionally Mrs. Copeland asked for a copy of the autopsy.  Inv. Shelton and John Doe claimed Clayton County would not produce the police report to GBI.

58.    On May 14, 2014, Mrs. Copeland, again, requested a copy of the autopsy report and photographs of the Decedent, from GBI.  Again, Inv. Shelton and John Doe informed the autopsy could not be produced because Clayton County Police had not released its Police Report.

59.    Based on the representation of Inv. Shelton and John Doe that they had to release the body to a funeral home, Mrs. and Mr. Copeland had the body moved to Georgia Cremation for burial.  On May 14, 2014, GBI released the body to Georgia Cremation and its Director, Defendant Kenny Miller.

60.    Mrs. and Mr. Copeland expressed to Mr. Miller that they desired to hold final viewing of the Decedent's body on May 17, 2014, to afford them an opportunity to contact family to attend.  However, Mr. Miller, on his own initiative, scheduled the funeral, sooner, for the following *day*, Thursday, May 14,

2014 at 3:00pm, without notifying Plaintiffs.  Consequently, Georgia Cremation gave Plaintiffs and their family only two hours to view the Decedent's body before it was cremated.

61.     Each of these Defendants knew the Decedent was physically and mentally disabled, and the Decedent and Plaintiffs were disadvantaged societally, economically, and educationally.

## GEORGIA CREMATION AND D. KENNETH MILLER'S UNATUHORIZED RETENTION OF $25,000

62.     Plaintiffs purchased regular burial insurance ($10,000) and accidental death insurance ($25,000) from Global Life and Accidental Insurance Company, on behalf of the Decedent, and Mr. Miller promised to collect the $10,000 and $25,000 on behalf of the Plaintiffs.

63.     The Decedent's regular burial insurance ($10,000) paid for the burial services Georgia Cremation provided to Plaintiffs, on behalf of the Decedent.  In fact, Mr. Miller reimbursed Plaintiffs the difference between the policy amount ($10,000) and the cost of the services.

64.     Mr. Miller acknowledged he received the $25,000 but has failed to tender the amount to Plaintiffs, even after they requested the same.

65.     Since learning of their son's death and the occurrences after it, Mrs. and Mr. Copeland, and Decedent's family, have grieved and mourned daily. They

feel and believe that the circumstances surrounding his death and burial, the investigation surrounding his death, the responses to their inquiries or lack thereof, are suspicious and malicious in nature, and there are unanswered questions.  This deepens their mourning.

66.     It is difficult for Mrs. and Mr. Copeland to eat, sleep, work, socialize, and function normally.  They are deeply depressed.  As a result of their son's death and the actions/inactions of each Defendant named in this lawsuit, Mrs. and Mr. Copeland's peace, happiness, and quality of life have diminished severely.

67.     Plaintiffs have not had the finances to retain a professional for counseling or to receive mental health treatment for their grief.

## V.     FEDERAL CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 DEPRIVATION OF CIVIL RIGHTS
### (Asserted against Clayton County, Officer Bell and Sgt. Malette, in their Individual Capacity)

68.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 19 as if plead herein; and allegations 36 through 39, 41 through 42, and 65 through 67, as to Clayton County; allegations 33 through 37, 39, 41 through 42, 51, and 65 through 67, as to Officer Bell; and allegations 33 through 42, 55, and 65 through 67, as to Sgt. Malette.

69.     Clayton County, Officer Bell, and Sgt. Malette deprived Plaintiffs,

Mrs. and Mr. Copeland, of their constitutional life, liberty, and property rights without due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution, by knowingly and intentionally preventing Plaintiffs from discovering the circumstances surrounding the Decedent's death, denying them access to pertinent information and interfering with their right to view Decedent's body and retrieve for burial.

70.    Officer Bell and Sgt. Malette failed to conduct a complete, full, and fair investigation into the Decedent's death and the circumstances surrounding it; they knowingly and intentionally omitted material and pertinent information in their Report; they falsified information in the Police Report; they failed to release information to Mrs. and Mr. Copeland, after repeated requests, so that they could view their son's body and properly bury him, thereby, interfering with the Plaintiffs' legal interest in their son's body and their right to pursuit of happiness.

71.    These Defendants demonstrated intent to harm Plaintiffs, and their actions/inactions amounted to reckless disregard for their legal rights, causing them harm, and thereby entitling them to punitive damages.

72.    The conduct of these Defendants violated clearly established constitutional or other rights, of which Defendants knew or of which a reasonable public official should have known.

73.     The acts, omissions, policies, patterns, and customs of these Defendants complained of herein were intentional, reckless, and show a callous disregard for, or deliberate indifference to Mrs. and Mr. Copeland's interest in a property right and right to pursuit of happiness.

74.     These violations are compensable pursuant to U.S.C. §1983.  As a direct and proximate result of these Defendants' conduct, Mrs. and Mrs. Copeland have suffered significant emotional harm, and they continue to experience the same, for which Defendants are liable to Plaintiffs.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 DEPRIVATION OF CIVIL RIGHTS
**(Asserted against GBI Representative, Inv. Shelton and John Doe, in their Individual Capacity)**

75.     Plaintiffs reallege and incorporate herein by reference paragraphs 1through 19 as if plead herein; and allegations 42 through 43, 46 through 50; 54 through 59, 61, and 65 through 67, as to Inv. Shelton; and allegations 42 through 43, 46  through 50; 55 through 59, 61, and 65 through 67, as to John Doe.

76.     Inv. Shelton and John Doe deprived Plaintiffs, Mrs. and Mr. Copeland, of their constitutional life, liberty, and property rights without due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.

77.     Inv. Shelton and John Doe unlawfully removed or caused the

unlawful removal of the Decedent's eyes and tissues from his person; intentionally delayed and did not inform Mrs. and Mr. Copeland of their son's death; they denied Mrs. and Mr. Copeland the right to view their son's body; they failed to release pertinent information in a timely manner to permit Mrs. and Mr. Copeland to properly view and bury their son, thereby, interfering with Plaintiffs' legal interest in a property right, and their right to pursuit of happiness.

78.    These Defendants demonstrated intent to harm Plaintiffs, and their actions/inactions amounted to reckless disregard for their legal rights, causing them harm, and thereby entitling them to punitive damages.

79.    The conduct of these Defendants violated clearly established constitutional or other rights, of which Defendants knew or of which a reasonable public official should have known.

80.    The acts, omissions, policies, patterns, and customs of these Defendants complained of herein were intentional, reckless, and show a callous disregard for, or deliberate indifference to Mrs. and Mr. Copeland's interest in a property right and right to pursuit of happiness.

81.    These violations are compensable pursuant to U.S.C. §1983.  As a direct and proximate result of these Defendants' conduct, Mrs. and Mrs. Copeland have suffered significant emotional harm, and they continue to experience the

same, for which Defendants are liable to Plaintiffs.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. §1985(3) CONSPIRACY TO DEPRIVE OF CIVIL RIGHTS**
**(Asserted against Covenant Connection and Karen Cole, and Anchor)**

82.   Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 19 as if plead herein; and allegations 21 through 32, and 65 through 67, as to Covenant Connection and Karen Cole; and allegations 24 through 32, and 65 through 67, as to  Anchor.

83.   42 U.S.C. §1985(3) provides a civil cause of action for any person who is injured in his person or property by reason of:  "two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities or any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws."

84.   Covenant Connection and Ms. Cole, and Anchor conspired together to violate the civil rights of Plaintiffs by preventing them from learning that their son went missing.  Their actions/inactions were motivated by and on account of the Decedent's class, a "discreet and insular minority" with "inherent personal

21

characteristics", and Mrs. and Mr. Copeland, each a "discreet and insular minority", socially, economically, and educationally disadvantaged individuals.

85.    The failure of these Defendants to inform Plaintiffs that the Decedent was missing was motivated by their belief that the Decedent because of his disability and Plaintiffs, because of their limited knowledge and societal, economical, and educational vulnerabilities and weaknesses, were powerless and Decedent's life was not worth reporting him missing.  They acted in a concerted effort.

86.    These Defendants demonstrated intent to harm Plaintiffs, and their actions/inactions amounted to reckless disregard for their legal rights, causing them harm, and thereby entitling them to punitive damages.

87.    The conduct of these Defendants violated clearly established constitutional rights or other rights, of which Defendants knew or of which a reasonable person in their position should have known.

88.    The acts, omissions, policies, patterns, and customs of these Defendants complained of herein were intentional, reckless, and show a callous disregard for, or deliberate indifference to Mrs. and Mr. Copeland's interest in a property right and right to pursuit of happiness.

89.    These violations are compensable pursuant to U.S.C. §1985.  As a

direct and proximate result of these Defendants' conduct, Mrs. and Mrs. Copeland have suffered significant emotional harm, and they continue to experience the same, for which Defendants are liable to Plaintiffs.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1985(3) CONSPIRACY TO DEPRIVE OF CIVIL RIGHTS**
**(Asserted against Southern Regional, Lifelink and its agents, and Inv. Shelton and John Doe, in their Individual Capacity)[3]**

90.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 19, and 83, as if plead herein; and allegations 42, 45, 48 through 54, 61, and 65 through 67, as to Southern Regional; allegations 43 through 50, and 65 through 67, as to Lifelink and its agents; allegations 40, 42 through 43, 46 through 50, 54 through 59, 61, and 65 through 67, as to Inv. Shelton; and allegations 42 through 43, 46 through 50, 55 through  59, 61, and 65 through 67, as to John Doe.

91.     Southern Regional, Lifelink and its agents, Inv. Shelton and John Doe, conspired with each other to violate the civil rights of Plaintiffs, on account of the Decedent's class, a "discreet and insular minority" with "inherent personal characteristics", and on account of Mrs. and Mr. Copeland, each a "discreet and insular minority" and disadvantaged individuals.

92.     These Defendants, aware of the Decedent's disability and Decedent's

---

[3] Plaintiffs are withdrawing their 42 U.S.C. §1985(3) claim against Georgia Cremation Centers and D. Kenneth Miller without prejudice.

and Plaintiffs' limited knowledge and societal, economical, and educational vulnerabilities and powerlessness, and motivated by the same, acted in a concerted effort when they unlawfully removed or caused the eyes and the tissues of the Decedent to be removed, and for some remuneration.

93.     The Defendants, with the intent to prevent Plaintiffs from discovering their violations, failed to notify Mrs. and Mr. Copeland of the removal; they failed to obtain their permission before the removal; they failed to comply-with Southern Regional's and Lifelink's policy and Georgia law; they interfered with Plaintiffs' property right, thereby violating their equal protection of the laws and equal privileges and immunities under the law.

94.     Southern Regional, Lifelink, Inv. Shelton, and John Doe's failure to notify Mrs. and Mr. Copeland of the taking was in furtherance of the conspiracy.

95.     Southern Regional and Lifelink earned pecuniary gain or some remuneration as a result of the unlawful removal.

96.     These Defendants demonstrated intent to harm Plaintiffs, and they amounted to reckless disregard for their legal rights, causing them harm, and thereby entitling them to punitive damages.

97.     The conduct of these Defendants violated clearly established constitutional rights or other rights, of which they knew or of which a reasonable

public official and private individual should have known.

98.     The acts, omissions, policies, patterns, and customs of these Defendants complained of herein were intentional, reckless, and show a callous disregard for, or deliberate indifference to Mrs. and Mr. Copeland's interest in a property right and right to pursuit of happiness.

99.     These violations are compensable pursuant to U.S.C. §1985.  As a direct and proximate result of these Defendants' conduct, Mrs. and Ms. Copeland have suffered significant emotional harm, and they continue to experience the same, for which Defendants are liable to Plaintiffs.

### FIFTH CLAIM FOR RELIEF
### MUNICIPALITY LIABILITY
### (Asserted against Clayton County)

100.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 19 as if plead herein; and allegations 36 through 39, 41, 57 through 58, and 65 through 67, as to Clayton County.

101.   Upon information and belief, the policymakers of the Clayton County police were aware that Officer Bell and Sgt. Malette engaged in report writing in violation of police standards (that they falsified reports; failed to conduct thorough investigations; failed to answer citizen inquiries), particularly in the circumstances surrounding the Decedent death, and they knew that this conduct had

systematically occurred in the police department. Yet, they acted with negligence, recklessness, and deliberate indifference by failing to instruct, supervise, discipline, correct, and train Officer Bell and Sgt. Malette, and its officers in correct criminal procedures, in general.

102. The Clayton County Police's actions/inactions constituted a policy or custom that is the moving force behind these officers' misconduct and behind the deprivation of citizen's rights under federal law, that government is liable to Plaintiffs for their damages and sufferings.

## VI. STATE CAUSES OF ACTION

### SIXTH CLAIM FOR RELIEF
### NEGLIGENCE/BREACH OF DUTY
**(Asserted against Covenant Connection and Karen Cole, and Anchor)**

103. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 19 as if plead herein; and allegations 20 through 32, and 65 through 67, as to Covenant Connection and Ms. Cole; and allegations 23 through 32, and 65 through 67, as to Anchor.

104. Covenant Connection, Ms. Cole, and Anchor had a duty to provide the Decedent, a severe mentally and physically incapacitated adult, with 24-hour supervision, to prevent harm to him.

105. Fully aware of the Decedent's mental and physical incapacitation, Ms.

Cole and Anchor breached that duty when they failed to supervise Decedent, allowing him to walk off the grounds of Anchor and when they became aware that the Decedent went missing on May 9, and they failed to report the incident to law enforcement, resulting in his death.

106.   Ms. Cole further breached her duty when she allowed her physician to prescribe medication to the Decedent, without the Plaintiffs' knowledge and permission; further, without consulting with his primary care physician or otherwise permitting his physician to evaluate him, which contributed to the Decedent's death.

107.   As a result of the actions/inactions of these Defendants, Plaintiffs have suffered and continue to suffer mental anguish and emotional suffering, and these Defendants are liable to Plaintiffs for their sufferings and Decedent's death.

## SEVENTH CLAIM FOR RELIEF
## RESPONDEAT SUPERIOR/VICARIOUS LIABILITY
### (Asserted against Covenant Connection and Anchor)

108.   Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 19 as if plead herein; and allegations 20 through 32, and 66 through 67, as to Covenant Connection; and allegations 23 through 32, and 65 through 67, as to Anchor.

109.   Covenant Connection and Anchor are vicariously liable for the

negligent acts committed by its employees/agents, in that they failed to train and supervise the employees and oversee the immediate safety and security of the Decedent, while he was in their care.

110.   Consequently, Mrs. and Mr. Copeland sustained mental anguish, emotional pain and suffering, and ongoing damages arising out of the negligence resulting in their son's death, and these Defendants are liable to Plaintiffs as a result.

### EIGHTH CLAIM FOR RELIEF
### INTERFERENCE WITH BURIAL RIGHT
### (Asserted against Officer Bell and Sgt. Malette, Inv. Shelton, John Doe, and Georgia Cremation and D. Kenneth Miller)

111.   Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 19 as if plead herein; and allegations 33 through  41, 57, and 65 through 67, as to Officer Bell; allegations 33 through 41, 57, and 65 through 67, as to Sgt. Malette; allegations 42, 54 through 59, and 65 through 67, as to Inv. Shelton; allegations 55 through 59, and 65 through 67, as to John Doe; and 56 through 59, 65, and 65 through 67, as to Georgia Cremation and Mr. Miller.

112.   The Defendants' actions/inactions above amounted to unwarranted interference with the Decedent's right to view Decedent and properly bury him.

113.   Their actions/inactions were purposeful and done with a willful and malicious intent.   They caused Plaintiffs great anguish and emotional distress, for

which they are liable to Plaintiffs.

## NINTH CLAIM FOR RELIEF
### TRESSPASS TO PROPERTY AND PROPERTY RIGHTS
**(Asserted against, Southern Regional, Lifelink, and Inv. Shelton)**

114.   Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 19 as if plead herein; and-allegations 42, 45, 47 through 50, 52 through 54, and 65 through 67, as to Southern Regional; 43 through 50, and 65 through 67, as to Lifelink and its agents; allegations 42 through 43, 46, through 50, 54 through 57, and 65 through 67, as to Inv. Shelton; and 42 through 43, 46 through 50, 55 through 57, and 65 through 67, as to John Doe.

115.   These Defendants' removal and/or authorization of the removal of the Decedent's eyes and tissues and/or assistance in procuring the removal of the body parts desecrated the Decedent's body.  Such removal was without the consent of Decedent's living heirs and legal representatives, Mrs. and Mr. Copeland.

116.   The desecration of the Decedent's body by these Defendants was malicious, willful or wanton conduct, and without regard to the Plaintiffs' rights, causing Plaintiffs severe emotional distress and great anguish, for which these Defendants are liable to Plaintiffs.

## TENTH CLAIM FOR RELIEF
### INTEFERENCE WITH CONTRACTUAL RELATIONS
### (Asserted against Georgia Cremation and D. Kenneth Miller)

117.  Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 19 as if plead herein; and allegations 58 through 67.

118.  Plaintiffs, the Decedent's legal representatives and beneficiaries, relied on Defendants' promise to recover the insurance proceeds from the insurer, Global Life and Accidental Insurance Company, on behalf of Plaintiffs.

119.  Defendants unlawfully retained the insurance proceeds, thereby, interfering with Plaintiffs' enjoyment of such proceeds and causing injury to their peace and happiness, for which they are liable to Plaintiffs.

## ELEVENTH CLAIM FOR RELIEF
### CONVERSION
### (Asserted against Georgia Cremation and D. Kenneth Miller)

120.  Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 19 as if plead herein; and allegations 58 through 67.

121.  Plaintiffs were the legal representatives and beneficiaries for the Decedent and by virtue of their legal status hold title to the $25,000 insurance.

122.  Mr. Miller has retained the $25,000 and has refused to surrender the same to Plaintiffs, even after they demanded the same.

<u>**TWELVTH CLAIM FOR RELIEF**</u>
**INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(Asserted against Clayton County, Officer Bell and Sgt. Malette, Inv. Shelton and John Doe, and Georgia Cremation and D. Kenneth Miller, Southern Regional, Lifelink and Carley "Doe" and Tiffany "Doe", Covenant Connection and Karen Cole, and Crescent Behavioral Health System and Anchor Hospital)**

123.   Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 19 as if plead herein; and allegations 36 through 39, 41 through 42, 57 through 58, and 65 through 67 as to Clayton County; allegations 33 through 37, 39, 41 through 42, 51, 57 through 58, and 65 through 67, as to Officer Bell; allegations 33 through 41 through 42, 51, 55, 57 through 58, and 65 through 67, as to Sgt. Malette; allegations 42 through 43, 46, 48 through 50, 54 through 59, and 65 through 67, as to Inv. Shelton; allegations 42 through 43, 46, 48 through 50, 55 through 59, and 65 through 67, as to John Doe; 59 through 67, as to Georgia Cremation and Mr. Miller; allegations 42, 45, 48 through 50, 52 through 54, and 65 through 67, as to Southern Regional; allegations 43 through 50, and 65 through 67, as to Lifelink and its agents; allegations 21 through 32, and 65 through 67, as to Covenant Connection and Karen Cole; allegations 23 through 32, and 65 through 67, as to Anchor.

124.   The actions/inactions of these Defendants, as described above, were intentional or reckless, extreme, outrageous and insulting, so as to naturally cause

Mrs. and Mr. Copeland severe mental anguish and suffering. The events have resulted in a diminution of their quality of life, such that they are entitled to recover damages for severe emotional distress caused by Defendants.

WHEREFORE, Plaintiffs respectfully pray that this court allows this case to go forward, that a jury be empaneled, and that Plaintiffs recover:

a)  Actual, consequential, and nominal damages as proven, an amount in excess of $75,000;

b)  Compensatory damages, an amount in excess of $75,000;

c)  Damages for pain and suffering in an amount to be proved at trial, an amount in excess of $75,000;

d)  Punitive damages in an amount to be proved at trial, an amount in excess of $75,000;

e)  Equitable Relief, and

f)  Compensation for attorney fees in defending the above mention charges and for all other and further relief as the Court deems appropriate.

JURY TRIAL DEMANDED

Submitted this 3rd day of August, 2015.

/s/ Lucinda Jones
Lucinda Jones
Georgia Bar No. 402509
Attorney for Plaintiffs

advocate.lucinda@gmail.com

P. O. Box 90543
East Point, Georgia  30364
404-771-5790

**IN THE UNITED STATES DISTRICT COURT**
**THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **KAREN A. COPELAND and THOMAS** } | |
| **L. COPELAND, JR., for themselves,** } | |
| **as Legal Representatives of THOMAS  L.** } | |
| **COPELAND, a Mentally Incapacitated** } | **CIVIL ACTION FILE** |
| **Adult (Deceased);** } | **NO.1:15-CV-02303-ELR** |
| } | **VIOLATION OF THE** |
| **Plaintiffs,** } | **FOURTEENTH** |
| } | **AMENDMENT TO THE** |
| **vs.** } | **UNITED STATES** |
| } | **CONSTITUTION (42 U.S.C.** |
| **CLAYTON COUNTY, OFFICER I.** } | **§1983); CONSPIRACY TO** |
| **BELL, and SGT. SCOTT MALETTE,** } | **VIOLATE FOURTEENTH** |
| **in their Individual and Official Capacity** } | **AMENDMENT (42 U.S.C.** |
| **as Agents for CLAYTON COUNTY** } | **§1985(3)); NEGLIGENCE/** |
| **POLICE DEPARTMENT; INV. LISA** } | **BREACH OF DUTY;** |
| **SHELTON and JOHN DOE, in their** } | **INTERFERENCE WITH** |
| **Individual Capacity as Agents for    GBI;** } | **RIGHT TO BURIAL;** |
| **GEORGIA CREMATION CENTERS,** } | **TRESPASS TO PROPERTY** |
| **LLC, and D. KENNY MILLER, JR.;** } | **RIGHTS;   INTERFERENCE** |
| **SOUTHERN REGIONAL MEDICAL** } | **WITH CONTRACTUAL** |
| **CENTERS; LIFELINK FOUNDATION,** } | **RELATIONS; CONVER-** |
| **INC. and CARLEY "DOE" and** } | **SION; INTENTIONAL** |
| **TIFFANY "DOE"; COVENANT** } | **INFLICTION OF** |
| **CONNECTION and KAREN COLE;** } | **EMOTIONAL DISTRESS.** |
| **UHS OF ANCHOR, LP D/B/A** } | |
| **SOUHERN CRESCENT BEHAVIORL** } | |
| **HEALTH SYSTEM AT ANCHOR,** } | |
| } | |
| **Defendants.** } | |

**Certificate of Service**

This is to certify I have this day served a true copy of Plaintiff's **Amended Complaint for Civil Rights Violations** upon Defendants, with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

A. Ali Sabzevari, Esq.
Attorney at Law
661 Forest Park
Suite E
Forest Park, GA  30297
asabzevari@fmglaw.com
770-303-8633
Attorney for Clayton County,
Officer I. Bell, and Sgt. Scott
Malette

Ellen A. Cusimano, Esq.
Attorney at Law
Office of Attorney General
40 Capitol Square, SW
Atlanta, GA  30334
ecusimano@law.ga.gov
404-656-3370
Attorneys for Lisa Shelton

Jason D. Darneille, Esq.
Crim & Bassler, LLP
100 Galleria Parkway
Ste. 150
Atlanta, GA  30339
jdd@crimbassler.com
770-955-5976
Attorneys for Georgia Cremation
Centers, LLP and Kenneth Miller, Jr.

John R. Lowery, Esq.
Mozley, Finlayson & Loggins,
LLP
5606 Glenridge Drive, Ste. 900
Atlanta, GA  30342
jlowery@mflaw.com
404-256-0700
Attorneys or Lifelink Founda-
tion, Inc.

Michael Hostetter, Esq.
Nall & Miller, LLP
235 Peachtree Street, N.E.
Suite 1500
Atlanta, GA  30303-1401
Attorneys for UHS of Anchor, LP

Karen Cole and Covenant
Connection
P.O. Box 926581
Riverdale, GA  30349
(No attorney appearance)

Submitted this 3rd day of August, 2015.

/s/Lucinda Jones
Georgia Bar No. 402509
Attorney for Plaintiff

P. O. Box 90543
East Point, Georgia  30364
Office:  404-771-5790
Fax:     770-942-2051
Advocate.lucinda@gmail.com